UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ERNESTINE BLAKE,

        Plaintiff,

    -against-

NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION,

        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

14 Civ. 3340 (JGK) (AJP)

**OPINION & ORDER**

**ANDREW J. PECK, United States Magistrate Judge:**

        Having accepted the City's Rule 68 Offer, presently before the Court is plaintiff Ernestine Blake's motion for attorneys' fees and costs. (Dkt. No. 51.) The parties have consented to decision of the motion by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 75.) For the reasons set forth below, the motion is <u>GRANTED IN PART</u>, and judgment is entered in Blake's favor against defendant in the amount of $36,943.13 in attorneys' fees and $1,047.67 in costs.

## FACTS

        Blake, an African-American woman, was hired in 2004 by defendant New York City Health and Hospitals Corporation (the "City" or "HHC") as a "Civil Service Special Officer." (Dkt. No. 18: Am. Compl. ¶ 10.) Blake alleges that her supervisors gave preferential treatment to similarly situated non-African American employees. (Id. ¶¶ 12, 14-15.) Specifically, Blake alleges that she was deprived of more desirable job assignments and overtime duties; when Blake complained, she alleges that she "became the subject of a harassing and retaliatory work environment." (Id. ¶¶ 12-17.) Blake estimates that she "lost an average of $750 a week or more in mandatory Over Time pay[ ] during the relevant time period." (Id. ¶ 27.)

On March 9, 2016, the City tendered a Rule 68 Offer of Judgment "for the total sum of five thousand and one dollars ($5,001) plus reasonable attorneys' fees, expenses, and costs accrued to date, for plaintiff's claims." (Dkt. No. 43: Offer of Judgment at 1.) Blake accepted the City's Offer of Judgment on March 21, 2016 (Dkt. No. 43: 3/21/16 Letter), and judgment was entered on June 20, 2016 (Dkt. No. 45). Presently before the Court is Blake's application for reasonable attorneys' fees. (Dkt. No. 51.)

## ANALYSIS

### I. LEGAL STANDARDS GOVERNING ATTORNEYS' FEE AWARDS

Traditionally, "[i]n determining a fee award, the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007) (citing Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983)).[1] Particularly in awarding statutory attorneys' fees, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward . . . ." Hensley v. Eckerhart, 461 U.S. at 434, 103 S. Ct. at 1940; see also, e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 186 (2d Cir. 2008) ("[T]he lodestar method involved two steps: (1) the lodestar calculation; and (2) adjustment of the lodestar based on case-specific considerations."); Lane Crawford LLC v. Kelex Trading (CA) Inc., 12 Civ. 9190, 2013 WL 6481354 at *6 (S.D.N.Y. Dec. 3, 2013) (Peck, M.J.), R. & R. adopted, 12 Civ. 9190, 2014 WL 1338065 (S.D.N.Y. Apr. 3, 2014).

---

[1] The Second Circuit requires contemporaneous time records as a prerequisite for awarding attorneys' fees. E.g., N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).

3

In April 2010, the Supreme Court revisited the issue of attorneys' fees and approved of the "lodestar" approach over the more discretionary approach of Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), holding:

> Although the lodestar method is not perfect, it has several important virtues. First, in accordance with our understanding of the aim of fee-shifting statutes, the lodestar looks to "the prevailing market rates in the relevant community." Developed after the practice of hourly billing had become widespread, the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case. Second, the lodestar method is readily administrable, and unlike the Johnson approach, the lodestar calculation is "objective," and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.

III

> Our prior decisions concerning the federal fee-shifting statutes have established six important rules that lead to our decision in this case.
>
> First, a "reasonable" fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. . . .
>
> Second, the lodestar method yields a fee that is presumptively sufficient to achieve this objective. Indeed, we have said that the presumption is a "strong" one.
>
> Third, although we have never sustained an enhancement of a lodestar amount for performance, we have repeatedly said that enhancements may be awarded in "'rare'" and "'exceptional'" circumstances.
>
> Fourth, we have noted that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee," and have held that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation. We have thus held that the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors "presumably [are] fully reflected in the number of billable hours recorded by counsel." We have also held that the quality of an attorney's performance generally should not be used to adjust the lodestar "[b]ecause considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate."
>
> Fifth, the burden of proving that an enhancement is necessary must be borne by the fee applicant.

4

> Finally, a fee applicant seeking an enhancement must produce "specific evidence" that supports the award. This requirement is essential if the lodestar method is to realize one of its chief virtues, i.e., providing a calculation that is objective and capable of being reviewed on appeal.

Perdue v. Kenny A., 559 U.S. 542, 551-53, 130 S. Ct. 1662, 1672-73 (2010) (citations omitted).[2]

As the fee applicant, plaintiff "bears the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." General Elec. Co. v. Compagnie Euralair, S.A., 96 Civ. 0884, 1997 WL 397627 at *4 (S.D.N.Y. July 3, 1997) (Scheindlin, D.J. & Peck, M.J.).[3]

---

[2] Although the Supreme Court's Perdue opinion appeared to cast doubt on the viability of the Second Circuit's 2008 opinion in Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d at 190, which relied on, among other factors, the Johnson factors, Arbor Hill remains the standard in this Circuit. See, e.g., Hui Luo v. L & S Acupuncture, P.C., No. 15-1892-CV, 2016 WL 2848646 at *2 (2d Cir. May 16, 2016); Gortat v. Capala Bros., Inc., 621 F. App'x 19, 22 (2d Cir. 2015) (reviewing attorneys' fee award under Arbor Hill and Johnson factors); K.L. v. Warwick Valley Cent. Sch. Dist., 584 F. App'x 17, 18 (2d Cir. 2014) ("In determining an appropriate hourly rate, 'the district court should consider, among others, the Johnson factors.'" (quoting Arbor Hill)); Torres v. Gristede's Operating Corp., 519 F. App'x 1, 3-4 (2d Cir. 2013). In any event, the result would not differ here under either approach.

[3] Accord, e.g., Charles v. City of N.Y., 13 Civ. 3547, 2014 WL 4384155 at *3 (S.D.N.Y. Sept. 4, 2014); Boutros v. JTC Painting & Decorating Corp., 12 Civ. 7576, 2014 WL 3925281 at *4 (S.D.N.Y. Aug. 8, 2014); Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011) (Peck, M.J.); N.Y. City Dist. Council of Carpenters v. Rock-It Contracting, Inc., 09 Civ. 9479, 2010 WL 1140720 at *2 (S.D.N.Y. Mar. 26, 2010) (Peck, M.J.), R. & R. adopted, 2010 WL 1558568 (S.D.N.Y. Apr. 19, 2010); Cablevision Sys. N.Y.C. Corp. v. Torres, 02 Civ. 7602, 2003 WL 22078938 at *5 (S.D.N.Y. Sept. 9, 2003) (Peck, M.J.); Sowemimo v. D.A.O.R. Sec., Inc., 97 Civ. 1083, 2000 WL 890229 at *3 (S.D.N.Y. June 30, 2000), aff'd, 1 F. App'x 82 (2d Cir. 2001); Lavin-McEleney v. Marist Coll., 96 Civ. 4081, 1999 WL 33500070 at *3 (S.D.N.Y. Sep. 28, 1999), aff'd, 239 F.3d 476 (2d Cir. 2001); N.S.N. Int'l Indus. N.V. v. E. I. DuPont de Nemours & Co., 89 Civ. 1692, 1996 WL 154182 at *2 (S.D.N.Y. Apr. 3, 1996) (Peck, M.J.); see, e.g., Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941 (1983).

5

## II. BLAKE IS ENTITLED TO REASONABLE ATTORNEYS' FEES

### A. The Offer of Judgment

Federal Rule of Civil Procedure 68(a) provides that "a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Here, the Offer of Judgment states that Blake is entitled to "reasonable attorneys' fees, expenses, and costs accrued to date," i.e., March 9, 2016, the date the Offer was made. (See Dkt. No. 43: Offer of Judgment (emphasis added); see page 2 above.) The City argues that Blake is not entitled to any attorneys' fees or costs that accrued after March 9, 2016, including any fees incurred litigating the instant motion. (Dkt. No. 54: City Br. at 8.)

"Rule 68 offers of judgment and acceptances thereof are contracts to be interpreted according to ordinary contract principles." Steiner v. Lewmar, Inc., 816 F.3d 26, 31 (2d Cir. 2016).[4/] "If the terms of a [Rule 68] contract are clear, courts must 'take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself.'" Steiner v. Lewmar, Inc., 816 F.3d at 32. Therefore, if "the language of the contract [i.e., the Rule 68 offer and acceptance thereof] is clear and unambiguous, the contract is to be given effect according to its terms.'" Id. (alterations in original).

Courts accordingly decline to "'alter or go beyond the express terms' of the parties' agreement" when interpreting an offer of judgment that includes a clear cutoff date for fees or costs. Penley v. City of N.Y., 14 Civ. 1577, 2015 WL 5256979 at *1-2 (S.D.N.Y. Sept. 8, 2015) (Koeltl,

---

[4/] See also, e.g., Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 670 (2016); Goodheart Clothing Co. v. Laura Goodman Enters., Inc., 962 F.2d 268, 272 (2d Cir. 1992) ("Offers of judgment pursuant to Fed.R.Civ.P. 68 are construed according to ordinary contract principles."); Greco v. Natow, No. 14CV4222, 2016 WL 1704136 at *1 (E.D.N.Y. Apr. 28, 2016).

D.J.) (plaintiff barred from recovering attorneys' fees in connection with the enforcement of an offer of judgment where the offer included "reasonable attorneys' fees, expenses, and costs up to the date of the offer"); see also, e.g., Barile v. Allied Interstate, Inc., 12 Civ. 916, 2013 WL 795649 at *8 (S.D.N.Y. Jan. 30, 2013) ("[I]n cases where the offer of judgment covers fees and costs 'up to' the date of the offer only, the Court should deduct any entries that post-date the offer of judgment."), R. & R. adopted, 2013 WL 829189 (S.D.N.Y. Mar. 4, 2013).

Therefore, although a party normally would be entitled to reimbursement for time spent preparing a fee application, see, e.g., Weyant v. Okst, 198 F.3d 311, 316 (2d Cir. 1999), that is not the case where the offer of judgment excludes such fees by limiting fees to the date of the offer. See, e.g., Guerrero v. Cummings, 70 F.3d 1111, 1114 (9th Cir. 1995) ("Even though there may be a post-offer proceeding, the terms of the offer . . . control the cut-off of attorney's fees and costs."), cert. denied, 518 U.S. 1018 , 116 S. Ct. 2549 (1996); Schoolcraft v. City of N.Y., 10 Civ. 6005, 2016 WL 4626568 at *13 (S.D.N.Y. Sept. 6, 2016) ("The Rule 68 Judgment provides 'plaintiff shall be entitled to reasonable attorney's fees, expenses, and costs to the date of this offer[.]'  On the terms of the agreement alone, fees-on-fees are denied." (record citation omitted)); Penley v. City of N.Y., 2015 WL 5256979 at *2; Barile v. Allied Interstate, Inc., 2013 WL 795649 at *26 n.17 ("To the extent the Kimmel Firm relies on the general principle that . . . fees may be recovered for the time spent preparing a fee application, this Court notes that this general principle does not mean that a plaintiff who is entitled to fees based on a specific offer of judgment may somehow recover more fees than the offer of judgment contemplates, simply because additional time was spent on the fee application."); Foster v. Kings Park Cent. Sch. Dist., 174 F.R.D. 19, 29 (E.D.N.Y. 1997) ("The offer of judgment in this case expressly states that the settlement is for $14,000 'together with costs accrued to date.'  In the Court's view, this language is sufficiently clear so as to bar an award for

7

attorney's fees subsequently incurred, such as the $2,985.00 in attorney's fees for the time involved in this motion" for attorneys' fees).

The instant Offer of Judgment, dated March 9, 2016 and communicated to Blake's counsel the same day, unambiguously provides for attorneys' fees and costs incurred through the date of the Offer. (See page 2 above.) While Blake's counsel argues that the Offer should be interpreted against the City as its drafter (Dkt. No. 56: Blake Reply Br. at 3), he points to nothing in the Offer that is ambiguous. See, e.g., Barile v. Allied Interstate, Inc., 2013 WL 795649 at *25 ("[T]he Firm first posits that the offer of judgment should be construed like any contract and that ambiguities should thus be construed against the drafter. The Firm, however, does not explain what is ambiguous about the offer that warrants departing from the four corners of the document."). The only other argument Blake's counsel raises is that "it would be a miscarriage of justice" under "the unique circumstances of this case" not to award fees-on-fees, "given that it was Defendant's conduct that resulted in the fee litigation." (Blake Reply Br. at 4.) Again, the Offer is clear; it permits "reasonable attorneys' fees" (see page 2 above), and the necessity of Court intervention to resolve which fees are reasonable does not entitle Blake to more than the Offer she accepted. There is nothing "unique" in this situation.[5]

---

[5] The Court notes that the City's pre-motion position that Blake's counsel was only entitled to $15,000 in fees based on a prior communication does not amount to bad faith, however questionable the City's counsel's position might have been. (Dkt. No. 52: Lee Aff. Ex. 2; Dkt. No. 53: Blake Br. at 1-2.) See, e.g., Long v. City of N.Y., 09 Civ. 6099, 2010 U.S. Dist. LEXIS 81020 at *5-6 (S.D.N.Y. Aug. 6, 2010) ("If the City's dispute over recoverable fees were in bad faith, th[e]n compensation for the work necessary for plaintiff[']s fee application may be justified. No such showing has here been made."). It instead appears that counsel for both parties made little or no meaningful effort to settle the fee dispute after the Offer of Judgment was accepted. (See Lee Aff. Ex. 2.) See also, e.g., Schoolcraft v. City of N.Y., 2016 WL 4626568 at *13 ("Although some courts have permitted [fees-on-fees], they are not warranted here where Plaintiff's counsel did not attempt to settle the matter prior to filing
(continued...)

8

The Court–and counsel–are bound by the plain language of the Offer. As a result, Blake cannot recover any attorneys' fees or costs that accrued after March 9, 2016.[6/]

**B.     Reasonable Hourly Rate**

Blake's counsel Lee Nuwesra was admitted to the bar in 1993 and has approximately 23 years' experience litigating "[c]ivil [r]ights, [l]abor and [e]mployment matters in the Southern District of New York." (Dkt. No. 52: Lee Aff. ¶ 5.) Nuwesra seeks $425 per hour for work he performed from May 2, 2014, the date he was retained, to April 4, 2016, the date Blake filed her acceptance of the Offer. (Id. ¶ 6; Lee Aff. Ex. 3: Time Sheet.) Nuwesra's retainer agreement with Blake states that any "statutory prevailing party attorney's fees [will be] based upon the year 2014 rates for [Nuwesra] which You have been notified are $425.00 an hour." (Lee Aff. Ex: 1: Retainer ¶ 2.ii.a.) In contrast, the City claims that Nuwesra is entitled to "an hourly rate of no more than $400 per hour" because "it cannot be said that Mr. Nuwesra is entitled to an hourly rate that exceeds the upper limit of what is typically awarded small firm attorneys specializing in civil rights and employment discrimination in this District." (Dkt. No. 54: City Br. at 16.)

In 2012, "[c]ourts in this District ha[d] determined . . . that the range of appropriate fees for experienced civil rights and employment law litigators is between $250 and $450." Gurung v. Malhotra, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012). Several more recent decisions have placed the upper limits of the range closer to $600. E.g., Dixon v. Agbai, 15 Civ. 850, 2016 WL 3702749 at *15 (S.D.N.Y. July 8, 2016) (Peck, M.J.), R. & R. adopted, 2016 WL 5660246 (S.D.N.Y. Sept.

---

[5/]     (...continued)
. . . . Any failure of the City to settle is counterweighted by Plaintiff's own role in perpetuating the instant dispute.").

[6/]     This moots Blake's request for an hourly rate of $500 for work performed "post 4-4-2016," as well as fees incurred litigating the instant motion. (Blake Br. at 2.)

9

28, 2016); Powell v. Metro One Loss Prevention Servs. Grp., 12 Civ. 4221, 2015 WL 9287121 at *2-3 (S.D.N.Y. Feb. 5, 2015), R. & R. adopted, 2015 WL 9255338 (S.D.N.Y. Dec. 17, 2015). Fee awards granted to attorneys with experience comparable to Nuwesra within the past few years reflect that increased range. See, e.g., Powell v. Metro One Loss Prevention Servs. Grp., 2015 WL 9287121 at *2-3 (reducing $700 hourly rate to $650 for "a partner with over 35 years of experience in employment litigation"); Charles v. City of N.Y., 13 Civ. 3547, 2014 WL 4384155 at *3-4 (S.D.N.Y. Sept. 4, 2014) (reducing hourly rate of $500 to $450 for attorney who "for roughly 13 years . . . directly handled all of [his law firm's] § 1983 cases in the Eastern and Southern Districts of New York [and state court] . . . and has 'been involved in Federal Civil rights litigation, in one form or another, for nearly 25 years.'"); Clark v. Gotham Lasik, PLLC, 11 Civ. 01307, 2013 WL 4437220 at *7 (S.D.N.Y. Aug. 20, 2013) (reducing $660 hourly rate to $500 for "a founding partner with more than fifteen years of experience handling employment disputes" who "provided no evidence that he has been paid $660 per hour in the past, nor . . . an expert affidavit from someone familiar with the area of employment law supporting such a rate."). Nuwesra most recently was awarded $350 per hour in April 2013. Castillo v. Time Warner Cable of N.Y.C., 09 Civ. 7644, 2013 WL 1759558 at *3 (S.D.N.Y. Apr. 24, 2013).

The Court finds that $425 per hour is reasonable in light of Nuwesra's experience, the amount is consistent with the rates awarded in this District, and it comports with Nuwesra's customary "year 2014 rate" as documented in his retainer agreements. See, e.g., Dixon v. Agbai, 2016 WL 3702749 at *15 ("In determining reasonable hourly rates, the Court must consider 'the range of rates plaintiff's counsel actually charge their clients. This is obviously strong evidence of what the market will bear.'"); Cordova v. D & D Rest., Inc., 14 Civ. 8789, 2015 WL 6681099 at *9 (S.D.N.Y. Oct. 29, 2015) ("A reasonable starting point for determining the hourly rate for purposes

of a [presumptively reasonable fee] calculation is the attorney's customary rate." (alterations in original)).  While the City notes that Nuwesra was last awarded $350 per hour (City Br. at 15), that award was made over three years ago based on Nuwesra's 2009 hourly rate (Dkt. No. 57: Lee Reply Aff. ¶ 23).  The increase in Nuwesra's hourly rate since then is reflective of the general proposition that fee awards increase over time.  See, e.g., Dixon v. Agbai, 2016 WL 3702749 at *15 ("'Consistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, . . . with average awards increasing over time.'").[7]  Nuwesra therefore is awarded his requested hourly rate of $425.

### C. Time Reasonably Expended

Blake seeks $40,693.75 in fees for 95.75 billed hours through April 4, 2016.  (Dkt. No. 52: Lee Aff. Ex. 3: Time Sheet at 3.)[8]  The City argues that: (1) the hours expended by counsel are excessive; and (2) a fee reduction is appropriate based on counsel's "extremely limited success in this case."  (Dkt. No. 54: City Br. at 10-11, 16-18.)

#### 1. Excessive Hours

The City seeks a 15% reduction for Nuwesra's performance of administrative tasks, his practice of billing in quarter-hour segments, and excessive hours.  (Dkt. No. 54: City Br. at 18.)

The only administrative task cited by the City (and the only one the Court found in the billing records) is the February 15, 2015 entry in which Nuwesra billed 8.5 hours to "Compile,

---

[7] Finally, while the City cites to a prior case in which Nuwesra's performance was found lacking (City Br. at 15-16), the City has not presented any evidence that Nuwesra's performance was substandard in this case such to justify a reduction of his hourly rate.  See, e.g., Stanczyk v. City of N.Y., 752 F.3d 273, 285 (2d Cir. 2014).

[8] Because Blake is not entitled to any fees that accrued after March 9, 2016, the date of the Offer of Judgment (see pages 7-8 above), the 4.25 hours Blake's counsel billed from March 10, 2016 through April 4, 2016 that total $1,806.25, are excluded.  (Time Sheet at 3.)

And Review Documents Bate Stamped P-1 through P-2136." (Dkt. No. 52: Lee Aff. Ex. 3: 2/15/15 Entry.)  This block-billed entry does not permit the Court to determine how much time was spent compiling the documents, an administrative task not compensable at attorney rates, as opposed to reviewing the documents, which would be compensable at attorney rates.  "As a general rule, block billing is disfavored. . . . [I]n the event of a later fee application, it impedes a court's ability to assess whether the time expended on any given task was reasonable." Beastie Boys v. Monster Energy Co., 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015); see also, e.g., J.S. Nicol, Inc. v. Peking Handicraft, Inc., 03 Civ.1548, 2008 WL 4613752 at *4 (S.D.N.Y. Oct. 17, 2008) (Peck, M.J.) ("[T]he practice of 'block billing,' i.e., using a single entry for a variety of distinct tasks, is not prohibited in this Circuit, but where block billing makes 'it difficult to determine whether, and/or the extent to which, the work done by . . . attorneys is duplicative or unnecessary,' courts often employ across-the-board percentage cuts." (citations omitted)).   Although there are several other examples of block billing present in Nuwesra's billing records, none of them includes any clerical tasks and the "entries contain enough detail so as to afford confidence that the time billed was productively spent." Capitol Records, Inc. v. MP3tunes, LLC, 07 Civ. 9931, 2015 WL 7271565 at *3 (S.D.N.Y. Nov. 12, 2015); see also, e.g.,  Synergy Aerospace Corp. v. LLFC Corp. 16 Civ. 2268, 2016 WL 5717582 at *4 (S.D.N.Y. Oct. 3, 2016).  Minimal reduction thus is justified.

Billing in quarter-hour segments, like block billing, generally is disfavored. "Quarter-hour billing 'tends substantially to overstate the amount of time spent when many tasks require only a short time span to complete' and 'adds an upward bias in virtually all cases.'" Local No. 46 Metallic Lathers Union  v. Brookman Constr. Co., No. 12-CV-2180, 2013 WL 5304358 at *5 (E.D.N.Y. Sept. 19, 2013) (quotations omitted); see also, e.g., Monette v. Cty. of Nassau, No. 11-CV-539, 2016 WL 4145798 at *8 (E.D.N.Y. Aug. 4, 2016) ("It seems very unlikely that each phone

call and e-mail exchange took fifteen minutes, and thus, the Court finds that a reduction is further warranted based on counsel's quarter-hour billing."); Kernes v. Glob. Structures, LLC, 15 Civ. 00659, 2016 WL 880199 at *11 (S.D.N.Y. Mar. 1, 2016); Chowdhury v. Hamza Exp. Food Corp., No. 14-CV-150, 2015 WL 5541767 at *12 (E.D.N.Y. Aug. 21, 2015) ("plaintiff's counsel bills in quarter-hour increments (rather than the preferred one-tenth hour)–a practice that can lead to inflated and imprecise billing" (record citation omitted)), R. & R. adopted, 2015 WL 5559873 (E.D.N.Y. Sept. 18, 2015); Powell v. Metro One Loss Prevention Servs. Grp., 12 Civ. 4221, 2015 WL 9287121 at *4 n.4 (S.D.N.Y. Feb. 5, 2015), R. & R. adopted, 2015 WL 9255338 (S.D.N.Y. Dec. 17, 2015). As there is minimal evidence of such overbilling, a modest reduction is appropriate to account for Nuwesra's practice of quarter-hour billing.

As for the City's general argument regarding excessiveness, the Court finds unreasonable the two hours Nuwesra spent reviewing the City's answer to the amended complaint that is nine pages of form denials and defenses. (Lee Aff. Ex. 3: 11/15/14 Entry; see generally Dkt. No. 19: City Answer.)

In light of the above, the Court imposes a five percent overall reduction, resulting in reduction of $1,944.37 in fees, and allowing $36,943.13 in fees.

### 2. Counsel's Allegedly Limited Success

"In determining whether a fee reduction is appropriate, 'the most critical factor is the degree of success obtained,' and courts should consider whether the plaintiffs 'achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'" Healey v. Leavitt, 485 F.3d 63, 72 (2d Cir. 2007) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434, 436, 103 S. Ct. 1933, 1940-41 (1983)). "Our circuit has . . . clearly adopted the view . . . that a district judge's authority to reduce the fee awarded to a prevailing plaintiff below the lodestar by

reason of the plaintiff's 'partial or limited success' is not restricted either to cases of multiple discrete theories or to cases in which the plaintiff won only a nominal or technical victory." Kassim v. City of Schenectady, 415 F.3d 246, 256 (2d Cir. 2005). "Both 'the quantity and quality of relief obtained,' as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved." Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008). Where the recovery of damages is the purpose of the litigation, "'a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought.' Such a comparison promotes the court's 'central' responsibility to 'make the assessment of what is a reasonable fee under the circumstances of the case.'" Farrar v. Hobby, 506 U.S. 103, 114-15, 113 S. Ct. 566, 575 (1992) (citation omitted); see also, e.g., Husain v. Springer, 579 F. App'x 3, 4 (2d Cir. 2014) ("This Court has read Farrar to call for the denial of attorneys' fees 'where recovery of private damages is the purpose of civil rights litigation,' such that an award of nominal damages demonstrates a lack of measurable success." (emphasis in original, quotations omitted)).

"Absent a purely technical victory in an otherwise frivolous suit," however, "litigation outcomes are only relevant to fee award calculations when they are a direct result of the quality of the attorney's performance." Millea v. Metro-N. R. Co., 658 F.3d 154, 168 (2d Cir. 2011); see also, e.g., Townsend v. Benjamin Enters., Inc., 679 F.3d 41, 60 (2d Cir. 2012) (the "'presumptively correct "lodestar" figure should not be reduced simply because a plaintiff recovered a low damage award'").

The City argues that Blake's lack of success is illustrated by her acceptance of the $5,001 Offer of Judgment with no declaratory or injunctive relief, even though her complaint demanded roughly $39,000 per year in unpaid overtime plus emotional distress damages. (Dkt. No.

14

54: City Br. at 10-11; see page 1 above.) The City also attempts to undermine Blake's claim by arguing that "the record refuted" her allegations that she was denied overtime, making it unlikely that she would have succeeded on the merits. (Id. at 3-4, 11.) As a result, the City argues that a 60% fee reduction is appropriate to account for Blake's "nominal relief." (Id. at 11.) Blake, on the other hand, contends that her "goal in this lawsuit" was to have the City adhere to the proper overtime and job assignment policies, which she claims occurred after this lawsuit was filed, and which resulted in a significant increase in her overtime pay. (Dkt. No. 58: Blake Aff. ¶¶ 7-13.) Blake accepted the City's Offer, she claims, in an effort "to put the case behind [her] and start planning for [her] retirement." (Blake Aff. ¶ 13.)

The City cites Baird v. Boies, Schiller & Flexner LLP, 219 F. Supp. 2d 510, 523 (S.D.N.Y. 2002) (Chin, D.J.), to support its request for a large fee reduction, but that case is distinguishable. (City Br. at 11.) In Baird, the plaintiffs estimated their damages to be $1.25 million, but ultimately accepted offers of judgment for $37,500. Baird v. Boies, Schiller & Flexner LLP, 219 F. Supp. 2d at 512. Judge Chin found "that plaintiffs accepted the offers of judgment because they realized, as the case progressed, that they had little hope of success on the merits." Id. at 523. The same cannot be said here. The City's argument that Blake was not improperly denied overtime is contradicted by Blake's affidavit, in which she further claims that she began receiving the appropriate number of overtime assignments only after this lawsuit began. (Blake Aff. ¶ 10.) Indeed, Blake's overtime compensation nearly doubled from 2013 to 2014, the year the complaint was filed, which lends some inferential support to her claim of discrimination, and may have obviated the need for an injunction. (Id. ¶ 11); see, e.g., Husain v. Springer, 579 F. App'x at 5. As a result, and particularly given the limited record before the Court, it is not clear that Blake's lawsuit was meritless such that "only nominal damages" were recovered "because of [Blake's] failure [or

15

inability] to prove an essential element of h[er] claim for monetary relief," Farrar v. Hobby, 506 U.S. at 115, 113 S. Ct. at 575, or that her settlement was a purely technical victory.

The Court declines, in its discretion, to impose a fee reduction for Blake's alleged limited success.

### III. BLAKE IS ENTITLED TO HER DOCUMENTED COSTS

The Offer of Judgment also provides for an award of costs. (See page 2 above.) Blake seeks $1,200 in costs, representing filing and service fees, and bulk Bate stamping and copying "over 2,000 pages of documents." (Dkt. No. 52: Lee Aff. ¶ 11.) The only receipt provided by Nuwesra is for $697.67 in copying costs, and the Court takes judicial notice of the $350 court filing fee. (Dkt. No. 57: Lee Reply Aff. ¶ 9 & Ex. 4: 2/13/15 Invoice.) In the absence of supporting documentation as to other costs, only $1,047.67 is recoverable. See, e.g., Laboy v. Office Equip. & Supply Corp., 15 Civ. 3321, 2016 WL 5462976 at *15 (S.D.N.Y. Sept. 29, 2016) (Peck, M.J.) (citing cases).[9]

---

[9] Nuwesra also seeks $125 as costs for his travel time spent to "personally serve[ ] Defendant with the initial Summons and Complaint." (Lee Reply Aff. ¶ 11.) The Court declines to classify this time as a "cost," and, if anything, it is more properly characterized as billable travel time. Nuwesra furthermore provides no contemporaneous time records for this task.

16

## CONCLUSION

For the reasons set forth above, Blake's motion for attorneys' fees and costs (Dkt. No. 51) is <u>GRANTED IN PART</u>, and the Clerk shall enter supplemental judgment in Blake's favor against defendant in the amount of $36,943.13 in attorneys' fees, and $1,047.67 in costs.

SO ORDERED.

Dated:   New York, New York
         November 3, 2016

_____
**Andrew J. Peck**
United States Magistrate Judge

Copies to:   All Counsel (ECF)